J. M. DA ROCHA *v.* UNITED STATES (No. 4138)[1]

[1] T. D. 49613.

United States Court of Customs and Patent Appeals, May 2, 1938

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellant.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil* and *William J. Vitale*, special attorneys, of counsel), for the United States.

[Oral argument April 13, 1938, by Mr. George R. Tuttle and Mr. Weil]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:[2]

This is an appeal from a judgment of the United States Customs Court, First Division, holding certain imported merchandise, invoiced as "joss sticks," dutiable as articles not specially provided for, manufactured partly of bamboo, at 45 per centum ad valorem under paragraph 409 of the Tariff Act of 1930, as assessed by the collector at the port of San Francisco, Calif., rather than free of duty as "Joss stick" under paragraph 1703, or, alternatively, as "Spunk" under paragraph 1769, of that act, as claimed by the importer.

The provisions, so far as pertinent, read as follows:

PAR. 409. * * * all articles not specially provided for, wholly or partly manufactured of rattan, *bamboo*, osier or willow, 45 per centum ad valorem. [Italics ours.]
PAR. 1703. [Free list.] Joss stick or joss light.
PAR. 1769. [Free list.] Spunk.

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

The cause was submitted to the trial court on the record in the case of *Balfour Guthrie & Co., Ltd.* v. *United States,* protest 659533–G, decided adversely to the claims of the importer by the United States Customs Court, First Division, T. D. 47678, 67 Treas. Dec. 737.

In its decision in that case, the trial court, in an opinion by McClelland, Presiding Judge, Brown, Judge, dissenting, stated that the appraiser's report, in answer to the protest, was timely, and that the merchandise was described therein as follows:

The merchandise covered by this protest is described in invoices A, C, I/K as. Joss Sticks. These so-called joss sticks are composed of dust, paste, and bamboo, and being articles partly manufactured of bamboo, they are dutiable at 45% ad valorem under paragraph 409 as returned by this office.

The court further stated that it was not clear from the testimony of record whether or not the importer was attempting to prove commercial designation; that the use of the merchandise had not been established; and held that there was insufficient evidence to overcome the presumption of correctness attending the collector's decision.

It is agreed by counsel for the parties that the merchandise invoiced as "joss sticks," in the instant case, is the same as that involved in the incorporated case.

In the case at bar, the trial court, in an opinion by McClelland, Presiding Judge, Brown Judge, dissenting, overruled the protest for the reasons stated in its decision in the incorporated case.

It is contended by counsel for appellant that the trial court erred in not holding that the evidence in the case was sufficient to establish that the involved merchandise was definitely, uniformly, and generally bought and sold in the wholesale trade of the United States under the name "joss sticks"; that the trial court's findings of fact were contrary to the uncontradicted evidence; and that, therefore, the judgment should be reversed.

In this court, appellant's only assignment of error is as follows:

As grounds of error in said decision it is asserted that the court below erred in not holding said articles to be free of duty under paragraph 1703 or paragraph 1769, tariff act of 1930, relating respectively to "joss stick or joss light" and to "spunk."

Obviously, the question of whether or not the trial court erred in failing or refusing to hold that appellant had established commercial designation of the involved merchandise is not raised in the assigment of errors, and it is not sufficient that it be presented in appellant's brief. See *G. Gennert (Inc.)* v. *United States,* 18 C. C. P. A. (Customs) 12, T. D. 43973; *United States* v. *J. L. Galef,* 18 C. C. P. A. (Customs) 180, T. D. 44377; *United States* v. *Belgam Corp. et al.,* 22 C. C. P. A. (Customs) 402, 408, T. D. 47402. Accordingly, we do not consider that issue.

The sole issue before us, therefore, is whether the involved merchandise comes within the common meaning of the terms "joss stick" or "joss light," as used in paragraph 1703, *supra*, or the term "spunk," as used in paragraph 1769, *supra*.

Importer's witness A. Hord Winn, manager of the firecracker department of Balfour Guthrie & Co., San Francisco (importer of Chinese firecrackers and merchandise like that here involved), identified Exhibit 1, and stated that it was representative of the merchandise in question.

The exhibit consists of two sticks or reeds, a substantial portion of each stick being covered with a composition, the ingredients of which are not stated in the record. The articles are used for lighting firecrackers.

The witness Winn testified that his company did "about fifty per cent of the firecracker business, including this article [referring to Exhibit 1]," in the United States, and that it sold the involved articles as "joss sticks." He stated, however, that he had no knowledge of how others engaged in the business of buying and selling the involved articles designated them, and that he did not know for what purpose they were used. He further stated that he was familiar with an article known as "punk"; that his company bought and sold it at wholesale; and that, *being of different composition* and not having "any stick through it," *it was an entirely different commodity from joss sticks*.

The witness Hal M. Thompson also testified for the importer. He stated that he was engaged in the business of selling fireworks; that articles like those here involved, which he purchased from the witness Winn's company, were sold by him as "Chinese joss sticks"; that he was familiar with a commodity known as "punk"; and that *it was not composed in part of reeds or sticks*.

So far as the common meaning of the terms "joss stick" or "joss light" is concerned, the testimony of the witnesses is not helpful.

"Joss stick" is defined by the lexicographers as follows:

A small stick or perfumed pastil consisting of a hardened paste made from the dust of various kinds of scented wood mixed with clay, used in Chinese temples and houses as incense before the idols, as a slow-match in measuring time at night, for lighting pipes, etc. [The Century Dictionary and Cyclopedia.]

A reed covered with a paste made of the dust of odoriferous woods, or a cylinder made wholly of the paste. Joss sticks are burned by the Chinese as incense before idols, etc. [Webster's New International Dictionary.]

In the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives, Vol. II, p. 2397, we find the following:

DESCRIPTION AND USES.—Joss sticks are reeds covered with a paste made from the dust of odoriferous woods, or cylinders made wholly of such paste. They are

used by the Japanese and the Chinese in their religious services as slow matches in the measuring of time at night, and for lighting pipes. By other people they are widely used as deodorizers.

There is no evidence of record, nor do counsel for appellant contend, that the involved merchandise, of which Exhibit 1 is representative, is composed of "reeds covered with a paste *made from the dust of odoriferous woods,*" or that it consists of "cylinders made wholly of such paste." (Italics ours.) Furthermore, it clearly appears from an examination of the exhibit that the involved merchandise is not made from the dust of odoriferous woods.

We think it is clear, therefore, that the merchandise in question is not within the common meaning of the term "joss stick."

Counsel for appellant do not argue that there is any distinction in meaning, statutory or otherwise, between the terms "joss stick" and "joss light," or that, if there is any difference in the meaning of those terms, the involved merchandise is included within the meaning of the statutory term "joss light."

Relative to the claim of counsel for appellant that if the merchandise is not free of duty as joss sticks under paragraph 1703, *supra,* it is free of duty as "spunk" under paragraph 1769, *supra,* it may be said that the testimony of the witnesses clearly establishes that merchandise referred to by them as "punk" is entirely different from that here under consideration.

In the summary of Tariff Information, *supra,* at page 2593, the Tariff Commission stated:

\* \* \* Spunk is a kind of tinder made from a species of fungus found on old trees. It is also called punk, amadou, black match, pyrotechnical sponge, and German tinder.

"Spunk" and "punk" are defined in Webster's New International Dictionary, respectively, as follows:

Wood that readily takes fire; touchwood; also, a kind of tinder made from a species of fungus; punk. \* \* \*

Wood so decayed as to be dry, crumbly, and useful for tinder; touchwood.

It appears from the Summary of Tariff Information, and from the quoted definitions, that the terms "spunk" and "punk" are used interchangeably.

Clearly, the involved merchandise is not within the common meaning of the term "spunk," and is not, therefore, free of duty under paragraph 1769, *supra.*

The judgment is *affirmed.*